UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA PEREZ DE MARTINEZ, Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant. | No. 2:25-cv-2368-DC-SCR<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court recommends denying Plaintiff's motion for summary judgment and granting Defendant's cross-motion.

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons, even if they have not paid into the program. *See* 42 U.S.C. § 1382(a); *Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375 (2003) ("Title XVI … is the [SSI] scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels[.]").

## I. PROCEDURAL BACKGROUND

Plaintiff protectively applied for DIB and SSI on March 29, 2022, alleging a disability onset date of December 20, 2020. Administrative Record ("AR") 23.[2] The applications were disapproved initially on June 14, 2022 and on reconsideration on October 28, 2022. AR 23. On May 31, 2023,[3] ALJ Vincent Misenti presided over hearings on Plaintiff's challenge to the disapprovals, where Plaintiff and Vocational Expert ("VE") June Hagen testified. AR 83, 88, 100, 204. On August 2, 2023, after the submission of additional evidence, the ALJ found Plaintiff "not disabled." AR 204-17. Upon review by the Appeals Council, however, on November 2, 2023, the case was remanded with instructions to:

> consider the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations and consider the claimant's past relevant work.

AR 23, 224-26. Accordingly, ALJ Misenti held a new hearing on November 22, 2024, where Plaintiff again testified along with VE Stephen Davis. AR 108, 111-12 115.

On May 16, 2025, ALJ Misenti again found Plaintiff not disabled. AR 23-38 (decision), 39-44 (exhibit list). On June 26, 2025, the Appeals Council upheld the ALJ's decision as the final decision of the Commissioner. AR 1-3 (decision), 4-5 (exhibit list).

The parties' cross-motions for summary judgment, based upon the Administrative Record, are fully briefed. ECF Nos. 11, 14. Plaintiff submitted a reply brief. ECF No. 16.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1976, and accordingly was, at 44 years old, a younger individual under the regulations as of the alleged disability onset date. AR 36; *see* 20 C.F.R §§ 404.1563(c), 416.963(c) (same). Plaintiff finished ninth grade in Guatemala and primarily communicates in Spanish. AR 586, 588. She worked as a janitor and as a housekeeper from 2003 to 2007 and a

////

---

[2] Two copies of the AR are electronically filed collectively as ECF No. 10 (AR 1 to AR 1577).

[3] The transcript mislabels the hearing date as May 31, 2025, two weeks after the decision date at issue in this matter.

personal caregiver from 2012 to 2021. AR 588. Asserted conditions include rheumatoid arthritis and diabetes. AR 587.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

////

2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity [("RFC")] make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

In his latest decision, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.
>
> 2. The claimant has not engaged in substantial gainful activity since December 20, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: diabetes mellitus, rheumatoid arthritis and status post right knee arthroplasty (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders or scaffolds; occasionally climb ramps and stairs; occasionally kneel and crawl; frequently balance, stoop, and crouch; frequently handle and finger bilaterally; never work at unprotected heights, and must avoid concentrated exposure to work around moving mechanical parts.

> 6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on August 6, 1976 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 26-37

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 37-38.

## VI. ANALYSIS

### A. The ALJ's Errors in Discrediting Subjective Testimony Were Harmless

#### 1. Subjective Testimony

##### a. May 31, 2023 Hearing

Plaintiff testified that arthritis, swollen hands and feet, knee replacement, and depression are the conditions that most disable her. AR 89. She had right knee surgery on June 27, 2022 and is waiting for surgery on the left. AR 89-90. Even in the right knee, she may need surgery again because her condition has not improved. AR 90-91. She goes to physical therapy but described her progress as "backwards" insofar as she will often find herself unable to walk the next day. AR 90, 99. Her doctor expects recovery to take up to two years, but has asked that she undergo more x-rays before determining why she is still in pain. AR 90-91. This pain only occurs when she walks for 15-20 minutes at a time. AR 91. As for her hands, Plaintiff described the fingers as deformed, twisted, and sometimes swollen to the point that she cannot bend them well. AR 91.

Plaintiff takes ibuprofen, gabapentin, and melotriptan for her pain, all of which are prescribed. AR 91. The interval between taking them has decreased over time from 8 hours to 5 to 4. AR 91. They reduce her pain to a 4 or 5 on a 1-10 scale. AR 92.

Plaintiff estimates that between all the intervals of 15-20 minutes spent walking, she can sit for a total of 4-5 hours. AR 92. The doctor prescribed a cane and a walker following her surgery, which she bought and has used, despite insurance not covering it. AR 92-93. She can also stand for about 20 minutes at a time, after which she needs to lay down for 90 minutes to two hours while elevating her feet with cushions. AR 93. Most of the sitting she does is also with her feet elevated. AR 99. Plaintiff estimated she can walk up to one block at a time and lift 10-12 pounds with both hands. AR 93. She could likely use her hands for 15-20 minutes at a time in a job setting, with 5- to 7-minute breaks in between – likely totaling 2 to 3 hours in an 8-hour workday. AR 98-99.

Plaintiff's children help her with her undergarments because she can no longer reach, but she otherwise handles her own bathing and grooming. AR 94. She usually wakes up, brushes her teeth, takes a few minutes to allow her numb hands to recover, goes to the kitchen, sits and recovers for a moment, and takes her medicine. AR 94. She then utilizes a machine she received after surgery that uses ice to dull her leg pain before deciding how much she can do for the rest of the day. AR 93-94. She then cleans whatever dishes her kids left and organizes things before sitting down. AR 95. Her kids clean every part of the house except for the kitchen. AR 95. Plaintiff only cooks once a day. She only puts her clothes in the laundry machine, while her son folds the laundry. AR 95. Plaintiff does use her cell phone to text and to go onto the internet, but mostly to look for videos on how to manage her pain. AR 95-96. She relies on a device that allows her to use the phone without her hands, only really holding it to send one text at a time. AR 98.

Plaintiff initially testified that she has driven 10 times a week in the year leading up to her hearing. AR 89. When asked where she goes, she corrected herself and explained that she only drives about 5 times per month since her June 2022 surgery, mostly to the grocery store just blocks away. AR 97-98. She otherwise relies on her son to drive. AR 96. She goes shopping

every two weeks but stays with the car each time, never handling cash herself. AR 96-97. Her children also take her to a restaurant every Mother's Day. AR 96.

b. November 22, 2024 Hearing

Plaintiff testified that doctors replaced her right knee with a "prosthesis" on June 27, 2022, but it did not fit well.[4] AR 112-13. That knee now bends frequently and leaves her nerves with a burning sensation. AR 112. Neurologist Markus Jackson theorized in October 2024 that nerve damage occurred during the surgery and that additional surgery is needed to repair it, but insurance has not yet approved this new procedure. AR 113-14.

2. ALJ Holding

The ALJ found that the medical evidence is inconsistent with Plaintiff's testimony as to the purported intensity, persistence and limiting effects of her condition. AR 30. After a lengthy summary of the medical record (AR 30-33), the ALJ noted that two orthopedists documented relatively benign findings before Plaintiff's right knee underwent surgery. AR 33. First, Dr. Jonathan Pettigrew did acknowledge in April 2022 that Plaintiff has some tenderness in her right knee's medial and lateral joint lines, but otherwise normal stability with a full range of motion. AR 31 (citing AR 758-59). The following month, Dr. Jesua Law observed normal coordination, strength, and tone along with a non-antalgic gait, with no deformities or tenderness over the right hip or knee. AR 31 (citing AR 761-62). Plaintiff's knee also exhibited +2 effusion, full extension, and 95-100 degrees of flexion. AR 31, 762. Dr. Law again found normal coordination, strength, tone, and a non-antalgic gait without any edema, deformities, or crepitus in June 2022. AR 31 (citing AR 982-83).

Further, the ALJ found that the medical record includes findings of a non-antalgic gait, full extension, normal strength, and stable drawer testing within a year of her right knee surgery. AR 34 (citing AR 974-86). The record also had instances of normal range of motion in that knee – including one in August 2022 despite tenderness (AR 1037) and one in February 2023 by Dr.

[4] Counsel's subsequent questions allowed Plaintiff to clarify that the "prosthesis" was actually a knee replacement surgery: "Well they cut bones on both sides and they put a prosthesis in my knee." AR 113.

Law with 110-degree flexion (AR 1019). AR 34. The ALJ also noted that Plaintiff reported during physical therapy visits that she was on her feet a lot and doing chores. AR 34 (citing AR 931). A MRI on March 21, 2024 also revealed only "moderate medial compartmental osteoarthritis and mild to moderate patellofemoral osteoarthritis[.]" AR 33-34 (citing AR 1269). Finally, in August 2024, Plaintiff denied having knee problems. AR 34.

As to her arthritis and carpal tunnel syndrome, the ALJ noted that medical records described it as "mild" and that she never needed surgery for her hands. AR 34 (citing AR 751, 772, 1013, 1016)

The ALJ also cited Plaintiff's summary of her daily activities. AR 34. By her own admission, she can sit for 4-5 hours per day, lift up to 10 pounds, and use her hands to text and surf the internet on her phone. AR 34. She also can wash dishes, cook, shop, make change at the store cash register, do her own laundry, brush her teeth, and clean. AR 34.

3. <u>Governing Law</u>

Evaluating a claimant's subjective testimony is a two-step process. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. *Id.* Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ can only reject the claimant's testimony about the severity of such symptoms if there are "'specific, clear and convincing reasons for doing so.'" *Id.* at 1014-15 (internal citations omitted); *see also Smartt v. Kijakazi*, 53 F.4 489, 494 (9th Cir. 2022) (applying this standard even "[w]hen objective medical evidence is inconsistent with a claimant's subjective testimony").

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective

statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." *Thomas*, 278 F.3d at 958.

Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how…symptoms affect" the plaintiff. 20 C.F.R. § 404.1529(a). Relevant factors include:

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; [and]
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.);

20 C.F.R. § 404.1529(c). As to the fourth and fifth factors (i.e., "iv" and "v" directly above), the Ninth Circuit permits ALJs to consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quoting *Fair*, 885 F.2d at 603); *see also Plummer v. Berryhill*, Case No. 2:16-cv-00753-AC, 2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue recommended treatment discredited…[plaintiff's] subjective testimony.").

4. <u>The ALJ Erred in Discounting Subjective Testimony Based on Daily Activities</u>

An ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). However, an ALJ can cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment). In other words, an ALJ may rely on the fact that a plaintiff "engages in numerous daily activities involving skills that

could be transferred to the workplace" if the ALJ "mak[es] specific findings relating to those activities." *Burch*, 400 F.3d at 680-81.

Plaintiff limits her objections to the portion of RFC analysis dedicated to limitations stemming from her right knee. The Court agrees with Plaintiff that the ALJ misrepresented the mobility required for her daily activities. The ALJ noted that Plaintiff testified to going shopping, for example. But this overstates her role in shopping trips and the physical activity required. ECF No. 1 at 16; AR 34. Plaintiff testified to mostly staying in the car whenever her family went shopping, not going inside herself. AR 96. She also emphasized that she does not pay with cash and coins, making the ALJ's assertion that she can make change at the cash register even more confusing. AR 34, 96-97.

Defendant's assertion that Plaintiff simply "disagrees" with the ALJ's interpretation and "proffers alternative interpretations" understates the ALJ's error. ECF No. 14 at 13. The ALJ's summary of the daily activities used to discredit Plaintiff's testimony is misleading. Nor did the ALJ attempt to explain how Plaintiff's limited driving, particularly after being forced to cut back following her surgery (AR 34), contradicts assertions regarding her ability to walk, stand, or otherwise use her legs. AR 28-29.

The ALJ erred in finding that Plaintiff's daily activities discount her subjective testimony.

5. <u>The ALJ Did Not Err in Finding that Medical Evidence Does Not Support Plaintiff's Testimony</u>

Aside from the analysis of daily activities, the ALJ's reasons for discounting Plaintiff's subjective testimony can be divided into two portions. He primarily focused on the proposition that Plaintiff's condition improved after her right knee surgery in June 2022. ECF No. 14 at 8-9; AR 34. He also argued, however, that medical records predating the surgery do not support the degree of impairment that Plaintiff alleged. AR 33; (citing AR 756-64, 975-86).

As to whether the surgery improved Plaintiff's condition, she asks in reply what additional treatment she could have pursued. ECF No. 16 at 5. This misstates the ALJ's position. The ALJ did not find that Plaintiff's surgery was a "conservative" form of treatment, but rather that it was somewhat effective in decreasing Plaintiff's symptoms. AR 34. That is a valid basis for

discounting subjective testimony. *Compare Burrell v. Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014) (finding that the claimant may not be credible because the condition underlying her symptoms "*improved*, both objectively and subjectively, after surgery.") (emphasis original)); *with Smartt,* 53 F.4th at 500 (acknowledging that 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citations omitted)).

As Plaintiff notes, the ALJ misinterpreted some post-surgical evidence when justifying this conclusion. He cited Exhibit 7F to argue that Plaintiff had normal gait, extension, and drawer testing less than a year after her surgery. AR 34 (citing AR 974-86). Yet only the last page of this exhibit is from a visit postdating the surgery, with the last line referencing a "RIGHT KNEE EXAM" but not listing the results. AR 986.

The ALJ also cited records from an August 2024 visit where Plaintiff denied having knee problems. AR 34, 1500. Plaintiff concedes that she denied having any knee problems but argues that because the visit was to address hypertension, her provider likely did not focus on musculoskeletal issues during that visit. ECF No. 11 at 17; AR 1498. In any case, even Defendant admits that a plaintiff's subjective complaints to physicians do not become medical evidence merely because they are recorded in physicians' notes. ECF No. 14 at 11 (citing *Batson*, 359 F.3d at 1195; *Sager v. Colvin*, 622 F. App'x 629, 629 (9th Cir. 2015)).

The ALJ also, however, cited findings of a normal range of motion in the right knee from Exhibits 12F and 13F. AR 34 (citing AR 1018-84). Plaintiff's attempts to challenge these findings fail. Plaintiff argues that the cited portion of Exhibit 12F revealed only a 110-degree range of motion for the right knee. ECF No. 11 at 14; AR 32, 34, 1019. But at no point does Plaintiff cite evidence suggesting that 110 degrees is not within the normal range of motion, such that the ALJ erred by implying that it was. As for Exhibit 13F, Plaintiff acknowledges that her range of motion was normal in August 2022 despite tenderness in the right knee, but argues that the ALJ overreached when finding that this reflects her range of motion specifically in that knee. ECF No. 11 at 14; AR 32, 34, 1037. This argument asks the Court to believe that a general finding of "normal range of motion" would be used to mask a significant limitation in a particular limb. Even if the Court found that possible in the abstract, reversing the ALJ on this point would

be to second-guess him with insufficient evidence. *See Thomas*, 278 F.3d at 958.

Plaintiff argues that even if the June 2022 surgery did resolve her issues, the ALJ should have found a closed period of disability benefits from her onset date up to her surgery. ECF No. 11 at 15; ECF No. 16 at 5 (citing *Smith v. Kijakazi,* 14 F.4th 1108, 1114 (9th Cir. 2021)). Defendant responds that the ALJ noted that Plaintiff "report[ed] an onset many months after her alleged onset date of December 20, 2020." ECF No. 14 at 10; AR 30. Specifically, she was given a "Return to Work" form on January 13, 2021, effective two days later, after a January 12 examination found no tenderness, swelling, deformity, or limitations in strength and range of motion. AR 30, 1171, 1186. Only in December 2021 did Plaintiff report having left her previous job a month earlier. AR 31, 833;[5] *see also* AR 588 (plaintiff reporting that she worked as a personal caregiver until 2021).

The Ninth Circuit rejects the proposition that Plaintiff could not have been disabled before November 2021 simply because she persisted in working for some time. In *Lingenfelter v. Astrue*, the Ninth Circuit refused to find that a claimant was capable of maintaining substantial gainful activity, and therefore precluded from a disability finding, because "claimant tried to work for a short period of time and, because of [her] impairments, *failed*[.]" 504 F.3d 1028, 1038 (9th Cir. 2007) (emphasis original). At what point Plaintiff's impairments may have rendered her disabled for legal purposes is not discernible solely from the fact that she resigned in November 2021.

In any case, whether the ALJ relied on plaintiff's ability to work through much of 2021 is unclear. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("We are constrained to review the reasons the ALJ asserts.")). The ALJ did not reference this point after summarizing the medical evidence, instead relying on the pre-surgical opinions of Dr. Pettigrew and Dr. Law. AR 33; (citing AR 756-64, 975-86). Plaintiff's only response is that by crediting findings from three months before her June 2022 surgery, the ALJ ignores years of abnormal findings prior. ECF No. 11 at 17 (citing AR

---

[5] The ALJ miscited this page as page 69 of Exhibit 2F, which does not exist, rather than of Exhibit 4F. AR 31.

752, 759, 762, 818, 844, 869, 882, 931-33, 983, 994-96, 998, 1000, 1007-09, 1002, 1019, 1244, 1262, 1258, 1280, 1372). Similarly, she argues that in crediting normal findings from after her surgery, the ALJ improperly ignored other examinations where Plaintiff exhibited a severely limited range of motion. ECF No. 11 at 14 (citing AR 996, 998, 1000, 1002, 1006, 1009).

The ALJ did in fact acknowledge a lot of this evidence in the general summary, noting that some findings of severe limitations also involved caveats. As to pre-surgery evidence, for example, Plaintiff cites notes from a November 2021 examination of her right knee, which "showed tenderness in the medial patellar facet and distal medial hamstring, abnormal range of motion on extension and flexion, and positive patellar grind[.]" ECF No. 11 at 6 (citing AR 844). But the ALJ noted that this same patellar apprehension test yielded negative results, and that Dr. Wong had noted normal sensation and only mild swelling. AR 30, 844. Although Plaintiff emphasizes that Dr. Wong's notes found the physical therapy "little helpful[,]" the ALJ emphasizes that home exercises were helpful and a knee sleeve was at least mildly helpful. ECF No. 11 at 6; AR 30, 843. Injections had also reduced the pain for a couple of months prior, as well as increasing flexibility in that knee. AR 30, 843.

As to post-surgical evidence, during Plaintiff's initial July 5, 2022 visit to Golden Bear Therapy, for example, Steven Lang found that she had good rehab potential for her right leg. AR 1009. Plaintiff had improved by her July 8 visit, where she was also informed that the level of pain she experienced was normal based on the time that had passed since her surgery. AR 1006. On July 12, Rohana Chettiar noted that manual therapy had lessened the stiffness in Plaintiff's right knee. AR 1002. On July 15, 2022, Plaintiff herself admitted to walking with less pain, albeit still an 8 out of 10. AR 1000. She continued to report improvement in her range of motion on July 19, even after a car accident. AR 998. On July 21, Chattier again noted "improved mobility and strength" in her right leg. AR 996; *see also* AR 32 (ALJ's summary of these visits).

In both cases, Plaintiff's citations to abnormal findings in various medical records, many of which the ALJ did summarize and presumably consider, carry little weight on their own. *Compare* ECF No. 11 at 11-13 (citing AR 752, 759, 761, 818, 822, 844, 868-72, 882, 932-33, 983, 994-96, 998, 1006-07, 1221, 1253-54, 1269-70, 1280) *with* AR 30-33 (citing AR 752, 758-

59, 761, 785-86, 818-21, 828, 833, 968-70, 982-83, 996, 998, 1000, 1002, 1017, 1073, 1213, 1218, 1221, 1240, 1249, 1257, 1269). The substantial evidence standard usually requires deference to the ALJ's interpretation, particularly as an administrative record will often include evidence that supports both sides. *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also White v. Comm'r Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009) (noting that plaintiff's allegation of cherry-picking data "cuts both ways"). The ALJ found that to be the case here before concluding that the evidence of normal functioning was at least persuasive enough to not fully credit Plaintiff's subjective testimony. AR 33-34. Citing the evidence that an ALJ chose to discount does not itself provide an adequate challenge to his ultimate finding.

The ALJ's analysis of the medical record was not without some misinterpretations. However, the conclusion that Plaintiff was not as impaired as she claimed in her testimony, either before or after surgery, was still supported by substantial evidence.

6. <u>Conclusion</u>

Although the ALJ erred in discounting Plaintiff's subjective testimony based on her daily activities, he did not err in finding that the medical record also supported discounting such testimony. As further discussed below, his error does not invalidate the analysis as a whole. *See infra* VI.C.

**B. The ALJ Did Not Err in Discounting Dr. Law's Opinion**

1. <u>Opinion and Holding</u>

In an April 2023 questionnaire, Dr. Law opined that the conditions for which he had treated Plaintiff did not preclude her from working at a non-strenuous job. AR 1085. Plaintiff could lift and carry 5-7 pounds for 2-3 hours in an 8-hour workday. AR 1085. She could sit for up to 3-4 hours at a time without support, and stand or walk for 20-30 minutes at a time without support. AR 1085. This translated into her sitting for a total of 6-7 hours in an eight-hour workday and standing for one. AR 1085. If Plaintiff's leg became painful and swollen, she would need to elevate her leg and rest for whatever portion of the workday she could not sit, stand, or walk. AR 1085.

When asked what Plaintiff's primary impairments were, Dr. Law responded with "limit

walking, climbing stairs, [and] frequent sitting." AR 1085. He broadly cited lab work, x-ray results, and clinical evaluations when explaining what guided his opinion. AR 1085.

The ALJ only credited Dr. Law's opinion to the extent that he found Plaintiff capable of performing full-time work and sitting for about six hours in an eight-hour workday. AR 35. As to supportability, the ALJ noted that Dr. Law listed proposed functional limitations when asked for Plaintiff's impairments. AR 35, 1085. As to consistency, Plaintiff had denied weakness, decreased range of motion, joint redness, joint stiffness, joint swelling, leg weakness, atrophy, muscle cramps, muscle pain, muscle weakness, physical disability, and swelling in November 2022. AR 35, 1017. As to more recent records, the statement that Plaintiff could only walk up to 30 minutes contradicted her assertion during a February 14, 2023 visit that she could walk up to 40 minutes while recovering from surgery. AR 35, 1018. At that examination, she exhibited a non-antalgic gait and normal coordination, with no effusion, open wounds, crepitus, or tenderness on her right knee. AR 35, 1019. The ALJ also reiterated Dr. Law's findings of intact sensation to light touch distally, brisk capillary refill, full range of motion on extension, a 110-degree range of motion on flexion, normal tone and strength without spasticity, negative special testing, and intact stability. AR 35, 1019. He concluded that taken together, these findings contradicted the assertion that Plaintiff could stand or walk for only 20-30 minutes at a time, for a total of one hour over an eight-hour period. AR 35. More broadly, the ALJ discounted this opinion as being only one year after Plaintiff's knee surgery and therefore reflecting her condition during a period of recovery. AR 35.

2. Governing Law

In evaluating medical opinion evidence for applications filed after 2017, ALJs give no specific evidentiary weight to any particular type of opinion or source, but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the

treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

3. Analysis

As to supportability, Plaintiff argues that the ALJ erred in finding that "limit walking, climbing stairs, [and] frequent sitting" do not constitute impairments. ECF No. 11 at 19; AR 35,

1085. She cited the dictionary definition of "impairment[,]" which is the state or condition of being impaired or the loss of function. AR 35. Even if this technically constitutes an impairment in everyday terms, as Defendant notes, this says little about what the form asks a medical expert to do when listing impairments – to support their opinion by explaining what medical conditions result in the alleged limitations. ECF No. 14 at 14.

Plaintiff then cites the fact that during the February 2023 examination, she had complained of constant right knee pain and Dr. Law had found only a 110-degree range of motion on flexion. ECF No. 11 at 19. As discussed above, a plaintiff's subjective complaints to a medical professional do not become medical evidence solely because the doctor then adds these complaints to his notes. *See supra* VI.A.5.b; ECF No. 14 at 11 (citing *Batson*, 359 F.3d at 1195; *Sager v. Colvin*, 622 F. App'x at 629). In any case, although Plaintiff argues these findings "support[] the doctor's opined limitations[,]" (ECF No. 11 at 19) this primarily addresses the consistency of the medical opinion with other evidence in the record.

Dr. Law effectively failed to support the limitations in his opinion with anything but vague references to other records. AR 1085. That alone justifies the ALJ's decision to discount Dr. Law's opinion, provided that the consistency analysis was legally adequate under 20 C.F.R. § 404.1520c(b)(2).

Plaintiff argues that even if Dr. Law found a non-antalgic gait and made other findings in February 2023 that undermined his opinion, both he and other providers had documented impaired functionality on multiple occasions. ECF No. 11 at 20 (citing AR 1244, 1250, 1258, 1262, 1280, 1372). She further argues that these records undermine the ALJ's position that Dr. Law's findings only reflect Plaintiff's limitations during a period of recovery following surgery. *Id.* As Defendant notes, however, other records in the relevant period reflect a normal gait with no knee problems as late as June 2023. ECF No. 14 at 15 (citing AR 761-63, 982-84, 1017, 1019-20, 1171, 1262). Even when Plaintiff had an antalgic gait and some tenderness (AR 1244, 1250), these records also noted full range of motion (AR 1244, 1250), negative drawer tests (AR 1244, 1250, 1262), and no gross deformities (AR 1244, 1262). Discounting Dr. Law's opinion based on inconsistency does not reflect a selective interpretation of the medical record.

The ALJ adequately justified the decision to discount Dr. Law's opinion.

**C. The Errors in the ALJ's Analysis are Harmless**

As explained above, the ALJ erred in discounting Plaintiff's subjective symptom testimony by reference to her activities of daily living. In *Stout*, the Ninth Circuit concluded that an error is harmless when it is "inconsequential to the ultimate nondisability determination." 454 F.3d at 1055. When reviewing the ALJ's credibility findings, the "relevant inquiry … is not whether the ALJ would have made a different decision absent any error … it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008). For example, multiple reasons for discounting testimony can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]" *Id.* at 1163; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence'") (internal citations omitted). In other words, if an ALJ provides multiple "record-supported reasons for discrediting the claimant's testimony," an error in any one reason is harmless on its own. *Stout*, 454 F.3d at 1055 (citing *Batson,* 359 F.3d at 1197.

As discussed above, the ALJ only erred in finding that Plaintiff's daily activities suggest a higher level of functioning than in her testimony. The ALJ did not err in findings that the pre- and post-surgical medical records undermine her allegations of impairment. These medical-evidence findings provided sufficient reason to discount Plaintiff's subjective testimony.

Assuming *arguendo* that the ALJ's error in discounting Plaintiff's subjective symptom testimony was not harmless, Defendant rightfully questions what effect this would have on the ultimate disability determination. ECF No. 14 at 10. Here, the VE testified that a hypothetical individual who was limited to *sedentary* work instead of *light* work, but whose limitations otherwise match Plaintiff's RFC, could still find substantial work as a telephone solicitor, clerical sorter, or document preparer. AR 36-37. Plaintiff has only objected to the ALJ's RFC as it relates to her leg. She does not contend that she could not perform sedentary work in conjunction with the other RFC limitations. She therefore does not show that the ALJ failed to demonstrate

she can perform jobs that exist in substantial numbers, even with her alleged limitations. Any error in the ALJ's RFC determination based on the discounting of her subjective testimony accordingly did not affect the ultimate finding that she is not disabled. *See Tammy W. v. Comm'r of Soc. Sec. Admin*, 787 F.Supp.3d 1175, 1185-86 (W.D. Wash. 2025) (noting that an error would be harmless if the flawed RFC the ALJ furnishes to the VE is not "outcome–determinative"); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (finding harmless the fact that the hypothetical presented to the VE did not reflect all RFC limitations because Plaintiff had not demonstrated an inability to return to previous work, only after which such testimony becomes necessary).

Whether Plaintiff's subjective testimony as to her leg was fully credited was ultimately irrelevant to whether she is disabled under the Act. Any error made in discounting this testimony was harmless and does not merit remand.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 11), be DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 14) be GRANTED;
3. The Commissioner's final decision in this matter be AFFIRMED; and
4. The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Local Rule 304(d). The parties are advised that failure to file

////

////

////

////

objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 8, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE